## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | |
|---|---|
| **LINDA NICOLE SKEENS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 1:13-13600** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

### **PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. By Standing Order entered June 12, 2013 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). This case is presently pending before the Court on the parties cross-Motions for Judgment on the Pleadings (Document Nos. 12 and 15.) and Plaintiff's Response. (Document No. 16.).

The Plaintiff, Linda Nicole Skeens, (hereinafter referred to as "Claimant"), filed an application for SSI on January 13, 2010 (protective filing date), alleging disability as of October 30, 2009, due to bipolar disorder, depression, anxiety, and asthma. (Tr. at 14, 203-08, 216, 220.) The claim was denied initially and upon reconsideration. (Tr. at 92-93, 94-96, 107-09.) On October 13, 2010, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 110-11.) Hearings were held on September 14, 2011, and March 13, 2012, before the Honorable Steven A. DeMonbreum. (Tr. at 32-68, 69-91.) By decision dated April 10, 2012, the ALJ determined that

Claimant was not entitled to benefits. (Tr. at 14-25.) The ALJ's decision became the final decision of the Commissioner on May 16, 2013, when the Appeals Council denied Claimant's request for review. (Tr. at 1-5.) Claimant filed the present action seeking judicial review of the administrative decision on June 6, 2013, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's

remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity during 2009. (Tr. at 16, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from "asthma/chronic obstructive pulmonary disease (COPD), schizoaffective disorder, personality disorder, bipolar disorder, depression, and anxiety," which were severe impairments. (Tr. at 17, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17, Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but had nonexertional limitations, as follows:

> Due to her asthma/COPD, the [C]laimant cannot have concentrated exposure to extreme cold as well as dust, fumes, odors, chemicals, or gases, or other respiratory irritants. Due to her mental impairments, the [C]laimant is limited to simple, repetitive, easy to learn unskilled work that does not require interaction with the public. She can only have superficial interaction with co-workers and supervisors. She is limited to non-stressful work, which is defined as work with no high production quotas and no strict time demands for production.

(Tr. at 19, Finding No. 4.) At step four, the ALJ found that Claimant had no past relevant work. (Tr.

5

at 24, Finding No. 5.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a food preparation worker, food counter attendant, and dining room and cafeteria kitchen helper and laundry worker at the unskilled medium level of exertion and jobs such as bottle packer and shirt presser at the unskilled light level of exertion. (Tr. at 24-25, Finding No. 9.) On this basis, benefits were denied. (Tr. at 25, Finding No. 10.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on November 26, 1984, and was 27 years old at the time of the supplemental administrative hearing, March 13, 2012. (Tr. at 24, 37, 203) Claimant had at least a

high school education and was able to communicate in English. (Tr. at 24, 37, 219, 221.) In the past, Claimant worked as a self-employed childcare attendant for her disabled son under Title 19. (Tr. at 24, 83, 222, 232-39.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence of record, and will discuss it below as it relates to the undersigned's findings and recommendation.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to give any weight to the opinion of employability of her treating psychologist, Ms. Jennings and limited weight to Ms. Jennings' medical source statement. (Document No. 12 at 9-15.) Claimant further alleges that the ALJ erred in giving limited weight to the opinions of Ms. Wyatt and Ms. McFadden. (Id. at 11.) Regarding Ms. Jennings, Claimant notes that Ms. Jennings was Claimant's treating psychologist of approximately 14 years and therefore asserts that her opinion as to disability was entitled to significant weight. (Id. at 11-12) She contends that the ALJ cherry-picked through Ms. Jennings' July 28, 2010, evaluation report and favorably selected random comments that suited his conclusion. (Id. at 12.) Claimant further asserts that the "other evidence of record" to which the ALJ referred in discounting Ms. Jennings' opinion essentially consisted of years of Ms. Jennings' treatment notes. (Id. at 13.) She also asserts that the ALJ improperly indicated that the GAF scores were inconsistent with Ms. Jennings' opinion. (Id. at 13-14.) Claimant contends, however, that these scores had no relevancy to the severity requirement of the mental impairments listings.

Claimant further alleges that the ALJ erred in giving great weight to the state agency opinion of Dr. Cloonan. (Document No. 12 at 14-15.) Claimant asserts that there were indications in Dr.

7

Cloonan's report that if she had all the medical reports at the close of the record, her opinion may have been altered. (Id. at 14.)

In response, the Commissioner asserts that the ALJ thoroughly considered the evidence of record and formulated an RFC assessment that fully accommodated her credibly established functional limitations. (Document No. 15 at 12.) The Commissioner asserts that Ms. Jennings' assessment of inability to perform work was based on Claimant's subjective complaints and was unsupported by any objective evidence, including Ms. Jennings' treatment notes. (Id.) The Commissioner further asserts that Claimant's treatment history and the opinions of the state agency experts fully supported the ALJ's RFC assessment. (Id. at 12-13.)

The Commissioner contends that the ALJ's decision is supported by substantial evidence for many reasons. (Id. at 14.) The Commissioner first asserts that Ms. Jennings' opinions on July 28, 2010, and August 22, 2011, were contradicted by her treatment notes. (Id.) The Commissioner notes that throughout Ms. Jennings' treatment, which began in 1998, she consistently documented that Claimant was friendly and cooperative and assessed GAF scores between 55 and 60.[2] (Id.) Ms. Jennings never observed violent behaviors of outbursts or problems with temper. (Id.) Second, the Commissioner asserts that Ms. Jennings' opinions contained several inconsistencies as compared to her treatment notes. (Id.) For instance, Ms. Jennings noted that Claimant was stable on medication and could manage fairly well in a low stress environment. (Id.) Nevertheless, she opined that Claimant was unable to work. (Id.) Third, the Commissioner asserts that Ms. Jennings' evaluation failed to consider Claimant's sporadic treatment and repeated refusal to take her prescribed

---

[2] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has "[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994).

medication. (Id. at 15.) She notes that Claimant failed to see Ms. Jennings for three years before she returned in 2010 when she was applying for benefits. (Id.) Fourth, the Commissioner asserts that Ms. Jennings' assessment of marked and extreme limitations in concentration, persistence, or pace was contradicted by Claimant's ability to concentrate and perform several assessments during her evaluation with Ms. Jennings. (Id.) Moreover, Claimant was compensated through the State to care for her disabled son. (Id.) The Commissioner asserts that the State would not pay Claimant to be the primary caretaker of her disabled son if she was mentally challenged. (Id.) Finally, the Commissioner asserts that the ALJ's RFC is supported by the opinions of the two state agency opinions, Dr. Boggess and Ms. Wyatt. (Id. at 16-17.) Accordingly, the Commissioner contends that the ALJ appropriately weighed all the medical evidence and fully accommodated Claimant's functional limitations in her RFC assessment. (Id. at 17.)

      Claimant next alleges that the Commissioner's decision is not supported by substantial evidence of record because the ALJ erred in relying on the VE testimony. (Document No. 12 at 17-18.) Claimant contends that Dr. Cloonan's "most notable restriction was that [Claimant] was limited to uncomplicated work-like activities with minimal interactions with others." (Id. at 17.) She notes that the ALJ asked the VE at the administrative hearing to assume factors including no interaction with the public and only superficial interaction with co-workers and supervisors. (Id.) In response, the VE identified four jobs that could be performed. (Id.) The ALJ then asked the VE whether those four jobs could be performed if Claimant was limited to minimal interaction with co-workers and supervisors. (Id.) The VE responded that his response would not change as to co-workers, but that all jobs required some interaction with the supervisor and that if an individual is limited to minimal contact with a supervisor, then that would disqualify that person from employment. (Id.) Because the ALJ gave great weight to Dr. Cloonan's assessment which allowed for minimal interaction with

others, and because the VE eliminated all jobs when this limitation was included in the hypothetical question, Claimant contends that the ALJ erred in relying on the VE testimony to find that Claimant was capable of performing other work. (Id. at 18.)

In response, the Commissioner asserts that Claimant mischaracterizes the limitations Dr. Cloonan assessed regarding Claimant's ability to relate to others in a work environment. (Document No. 15 at 17-18.) The Commissioner asserts that Dr. Cloonan did not indicate that Claimant was limited to no contact with any co-workers or supervisors. (Id. at 17.) Rather, she opined that Claimant was capable of uncomplicated work with minimal interaction with others. (Id.) The Commissioner asserts that the VE's hypothetical properly incorporated these limitations and the VE identified jobs in response. (Id.) The Commissioner notes that the VE then clarified that the identified jobs required only minimal supervision. (Id.) Accordingly, because Dr. Cloonan did not opine that Claimant was prevented from any and all contact with any supervisors, the ALJ was not required to incorporate such a limitation into a hypothetical question. (Id. at 17-18.)

Analysis.

1. Opinion Evidence.

Claimant first alleges that the ALJ erred in assessing the opinion of her treating psychologist, Ms. Jennings. (Document No. 12 at 9-15.) Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2011). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2012). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2012). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2012). The

opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2012). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

The medical evidence reveals that on July 28, 2010, Ms. Jennings conducted a psychological evaluation. (Tr. at 20, 417-23.) On mental status exam, Ms. Jennings noted that Claimant was cooperative and spontaneously generated conversation and had mildly deficient immediate and remote memory and moderately deficient recent memory. (Tr. at 20, 419.) Ms. Jennings administered the Minnesota Multiphasic Personality Inventory (MMPI-2), the Beck Anxiety Inventory Assessment, and the Beck Depression Inventory Assessment. (Tr. at 20, 420.) These tests indicated intense feelings of inferiority and insecurity and the suggestion of difficulty of becoming emotionally involved with other people. (Id.) Furthermore, the tests revealed mild anger and depressive symptoms. (Id.) Ms. Jennings diagnosed schizoaffective disorder, bipolar type; personality disorder NOS, with avoidant and schizoid traits, and she assessed a GAF of 55 to 60.[3]

---

[3] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has "[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, *Diagnostic and*

(Tr. at 20, 420-21.)

Ms. Jennings opined that Claimant "has had difficulty navigating the typical stressors encountered in gainful employment; including the need to interact appropriately with others and maintain consistency and attendance. She is able to maintain her current position with title XIX waiver due to it involves taking care of her disabled son and she has significant family support through her husband and her mother. It is not felt that she would be able to maintain competitive employment in an outside her home work environment." (Tr. at 20, 421.)

Ms. Jennings also completed a form Medical Source Statement of Ability to Do Work-Related Activities (Mental), on which she assessed that Claimant had many marked and extreme functional limitations, including the ability to interact appropriately with co-workers and supervisors. (Tr. at 20-21l 422-23.)

Ms. Jennings sent Claimant's attorney a letter on August 22, 2011, indicating that she had seen Claimant sporadically since 2004, for individual counseling. (Tr. at 20-21, 494-95.) Ms. Jennings noted that Claimant returned for therapy in 2006, because she had to leave a job as an aide at Family Connections due to extreme job stress, problems with mood swings, and not being able to control her anger. (Id.) Ms. Jennings noted that Claimant had a diagnosis of schizoaffective disorder, bipolar type for several years. (Tr. at 20, 495.) She also opined that Claimant's condition was stable on medication. (Id.) Without medications, Ms. Jennings noted that Claimant hears voices and in the past, reported that she was suicidal. (Id.) Ms. Jennings opined that Claimant "manages fairly well with a very low stress environment." (Id.) She did not believe that Claimant was "able to function in competitive employment." (Id.)

---

*Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994).

In addition to Ms. Jennings' treatment and opinions, the record contains the evaluation report of Melinda Wyatt, M.S., a licensed psychologist, who conducted a psychological evaluation on October 20, 2009. (Tr. at 20, 363-66.) On mental status exam, Ms. Wyatt noted that Claimant appeared anxious and her affect was restricted. (Tr. at 20, 364.) Nevertheless, she maintained adequate eye contact, was oriented in all spheres, generated brief responses to direct questions in a soft-spoken manner, presented her thoughts in an organized and logical manner, had adequate insight and judgment, and had adequate concentration. (Id.) Recent memory and pace were moderately deficient, remote memory was impaired, and immediate memory was within normal limits. (Id.) Ms. Wyatt administered the Beck Depression Inventory and the Beck Anxiety Inventory, which test results were consistent with severe depressive symptoms and moderate anxiety-related symptoms. (Tr. at 20, 365.) Ms. Wyatt diagnosed depressive disorder NOS, anxiety disorder NOS, and assessed a GAF of 59. (Id.)

Claimant also underwent a consultative examination with Tonya McFadden, M.A., on September 25, 2010. (Tr. at 21, 438-44.) Claimant reported that she had difficulty dealing with the public, experienced intense feelings of anger that lasted up to three hours, felt depressed, had difficulty concentrating and experienced auditory hallucinations that were not so intense when she was on her medications. (Tr. at 21, 439-40.) On mental status exam, Ms. McFadden noted relevant and coherent speech, an anxious mood and restricted affect, normal thought process and content, fair insight and normal judgment, normal immediate memory, intact remote memory, and moderately deficient recent memory, and normal persistence and pace. (Tr. at 21., 442.) She opined that Claimant's persistence was limited, her social functioning was mildly to moderately limited, and her pace was normal. (Id.) Ms. McFadden diagnosed schizoaffective disorder, bipolar type and anxiety

14

disorder NOS. (Tr. at 21, 443.)

In addition to the examination evidence, the medical record contains the opinions of the state agency physicians, Dr. Holly Cloonan, Ph.d. (Tr. at 21-22, 453-66, 467-70.) and Jeff Boggess, Ph.d. (Tr. at m 388-401.) Dr. Cloonan completed a form Psychiatric Review Technique, on which she opined that Claimant had mild restriction of activities of daily living; marked difficulty in maintaining social functioning; moderate difficulty maintaining concentration, persistence, or pace; and no episodes of decompensation each of extended duration. (Tr. at21-22, 453-66.) Dr. Cloonan also completed a form Mental RFC Assessment on which she assessed a marked limitation in the ability to interact appropriately with the general public. (Tr. at 21-22, 467-70.) She assessed either moderate limitation or noted that Claimant was not limited significantly in all other functional areas. (Id.) Dr. Cloonan opined that Claimant was able to learn and perform uncomplicated work-like activities with minimal interactions with others. (Tr. at 21, 469.)

Finally, Dr. Boggess completed a form Psychiatric Review Technique on March 8, 2010, and concluded that Claimant's mood disorder vs schizoaffective disorder was not a severe impairment. (Tr. at 388-401.) He opined that Claimant had no restriction of activities of daily living; mild difficulties in maintaining social functioning, concentration, persistence, or pace; and no episodes of decompensation. (Tr. at 398.) Dr. Boggess noted that Claimant's last counseling session in 2009, demonstrated a stability in mood, with few symptoms reported. (Tr. at 400.) He further noted that the more recent treatment notes from Southern Highlands revealed much less severe pathology. (Id.)

The ALJ gave no weight to Ms. Jennings' opinion that Claimant was not able to perform competitive work outside her home. (Tr. at 21.) He gave limited weight to her opinion that Claimant had marked and extreme limitations in concentration, persistence, and pace, and extreme limits in

all areas of social functioning. (Id.) In support of his decision, the ALJ noted that Ms. Jennings' opinion was inconsistent with her own report and the evidence of record. (Id.) During her consultation, Ms. Jennings noted that Claimant was cooperative and conversational (Tr. at 21, 419.), was able to concentrate well enough to complete psychological testing (Tr. at 21, 420.), and Ms. Jennings found only mild impairments in remote and immediate memories. (Tr. at 21, 419.) Moreover, after having a three-year absence in treatment, Claimant reported that her symptoms were better controlled with medication and that she was staying at home to care for her disabled son. (Tr. at 18, 473, 475.) The other evidence revealed that Ms. Wyatt found that her concentration was adequate enough to complete testing. (Tr. at 21, 364-65.) Claimant reported to Ms. McFadden that she was able to play video and card games and Ms. McFadden noted that her social functioning was only mildly to moderately deficient. (Tr. at 21, 442.) Finally, Ms. Wyatt and Ms. Jennings assessed GAF scores indicative of only moderate symptoms, and nothing as marked and extreme as Ms. Jennings assessed. (Tr. at 21, 365, 420-21.) The GAF scores are not dispositive, but are yet another factor to consider in reviewing the entire record.

  The ALJ gave greater weight to the opinion of Dr. Cloonan because her opinion was consistent with the findings in Claimant's mental status exams by Ms. Jennings, Ms. Wyatt, and Ms. McFadden; Claimant's treatment history; and her daily activities. (Tr. at 23.) For the reasons discussed, Dr. Cloonan's opinion is consistent with the mental exams of the three examining sources and Claimant's treatment history. The record indicates that Claimant's treatment was sporadic, and therefore, she was not compliant with her medications. Claimant admitted, however, that her symptoms improved when she was compliant with her medications. Respecting her daily activities, the ALJ noted that Claimant performed her personal care independently, prepared simple foods, did

laundry and cleaning, drove a vehicle, shopped, paid bills, counted change, used a checkbook, spent time with family, watched television, played with her son, played basketball, used skates, and played cards. (Tr. at 18.) She also cared for her disabled son. (Id.) Thus, the undersigned finds that the ALJ's decision that Dr. Cloonan's opinion was more in line with the evidence of record is supported by the substantial evidence of record.

Accordingly, in view of the foregoing, the undersigned finds that the ALJ's decision to give no weight to Ms. Jennings' opinion of disability and limited weight to her opinion, as well as Ms. Wyatt's and Ms. McFadden's opinions, is supported by the substantial evidence of record.

2. Hypothetical Question.

Claimant also alleges that the ALJ erred in relying on the testimony of the VE. (Document No. 12 at 17-18.) To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of a claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

In the ALJ's first hypothetical question to the VE, the ALJ asked the VE to assume an

individual of the same age, education, and work experience as Claimant, who must avoid concentrated exposure to cold, fumes, odors, dust, gases, and poor ventilation; who is limited to simple, easy to learn, repetitive, unskilled work with no interaction with the public and only superficial interaction with co-workers and supervisors. (Tr. at 84.) In response, the VE testified that she could perform jobs such as a kitchen helper, laundry worker, bottle packer, and shirt presser. (Tr. at 85-86.) The ALJ then noted Claimant's testimony of difficulty getting along with supervisors. (Tr. at 86.) He posed a second hypothetical that included minimal interaction with co-workers and supervisors, meaning that they would give a demonstration on how to work and Claimant would have no contact with them, and then they would come after her to inspect her work. (Id.) The VE responded that there are jobs available for minimal contact with co-workers. (Id.) The VE testified, however, that all jobs "are going to have some interaction with, with the supervisor," and if the individual was unable to accept any type of supervision, then that would disqualify that person from work. (Tr. at 87.) The VE clarified and stated that all jobs require supervision and if the supervision is going to be eliminated, then all jobs will be eliminated. (Id.)

  The undersigned agrees with the Commissioner and finds that Dr. Cloonan did not eliminate entirely Claimant's contact with others, including supervisors. Dr. Cloonan opined that Claimant was able to perform work-like activities with "minimal interactions with others." (Tr. at 469.) Among her checked-box limitations, she assessed that Claimant was only moderately limited in her ability to request assistance, get along with co-workers or peers, and accept instructions and respond to criticism appropriately from supervisors. (Tr. at 468.) If she had intended to eliminate any and all contact with supervisors, then one would think that these limitations would have been assessed as more extreme. Dr. Cloonan did indicate Claimant's ability to interact with the general public as

markedly limited. (Id.) Accordingly, the undersigned finds, as the Commissioner asserts, that Claimant misinterpreted Dr. Cloonan's assessed limitation, and that the ALJ appropriately relied on the VE testimony at step five of the sequential analysis.[4]

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 15.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and

---

[4] Claimant notes that at the conclusion of the first hearing, the ALJ stated that if she could obtain her school records and if they supported her testimony, he would find that she was disabled. (Document No. 12 at 15.) Claimant states that all of her disciplinary and suspension records when in school were not maintained. (*Id.*) Nevertheless, she alleges that her testimony was corroborated in a myriad of ways, and therefore, the school records would have been superfluous. (*Id.*) She asserts that she was receiving counseling from Ms. Jennings when in school and that he records document what was going on in her life when she was in school. (*Id.* at 15-16.) Claimant also asserts that she saw Dr. Philip Robertson on April 18, 2007, and provided him her history, including quitting school in the ninth grade. (*Id.* at 16.) Finally, Claimant asserts that the record contains a letter from a former teacher who described Claimant as having had behavioral problems when in school. (*Id.*) Claimant therefore, contends that these records corroborate her testimony and that the record as a whole confirms her disruptive school behavior that the ALJ stated would be sufficient to achieve disability benefits. (*Id.* at 16-17.) Claimant reiterates these statements in her Responsive Brief. (Document No. 16.) The undersigned finds that these records were available to the ALJ before he entered his decision. The undersigned further finds that Claimant is asking the Court to re-weigh the evidence, find that it supports her testimony, and award benefits. This re-weighing of the evidence is a function in which the Court cannot engage. Claimant does not allege any specific error committed by the ALJ, only that the evidence supports her testimony. Accordingly, the undersigned finds that Claimant is asking the Court to engage in a re-assessment or re-weighing of the facts of the case which is a function in which the Court should not engage on appellate review.

72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Senior Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date: August 29, 2014.

R. Clarke VanDervort
United States Magistrate Judge